**Amando Perez GARZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–91–00274–CR.**

Court of Appeals of Texas, Dallas.

March 23, 1992.

Rehearing Denied May 7, 1992.

Richard C. Jenkins, Dallas, for appellant.
Kathi Alyce Drew, Dallas, for appellee.

Before ENOCH, C.J., and LaGARDE and KINKEADE, JJ.

## OPINION

KINKEADE, Justice.

Amando Perez Garza appeals his conviction for murder. Following a jury trial, the jury assessed punishment at sixteen years' confinement in the state penitentiary. In two points of error, Garza argues that the

trial court erred in overruling (1) his requested instruction asking for a charge on the defense of the prescription drug, Prozac, and (2) his objection to the court's charge on voluntary intoxication and the definition of intoxication. Because the evidence did not raise the issue that Garza took Prozac and the trial court's charge tracked the language of the statute, the trial court did not err in refusing Garza's requested instruction and overruling his objection to the court's charge. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

Max Perry owned a salvage business and a used auto-parts store in Dallas. Perry employed Amando Garza to use Garza's bulldozer to spread several loads of dirt that had been dumped in Perry's salvage yard. Garza completed the job as Perry had requested. Although Perry testified that he paid Garza for spreading the dirt at the salvage yard, Garza came to his auto-parts store on the morning of July 22, 1989, and asked Perry to pay him. Perry told Garza that he did not have any money to give him. Garza left the auto-parts store, but returned after lunch and drank a six-pack of beer with Tim Carroll and Eduardo Arispe, two of Perry's employees.

Later in the afternoon, Garza and Arispe got another six-pack of beer and drank it in Garza's truck. Afterwards, the two men bought another six-pack of beer and went to load Garza's bulldozer at the salvage yard. Arispe followed Garza home, and the two men drank the rest of the beer. The two men then drove to a friend's house, bought another six-pack of beer, and drove back to the auto-parts store.

At the auto-parts store, Carroll, Garza, and Arispe finished drinking the six-pack of beer. Garza then left to buy more beer. When he returned, Garza again asked Perry to pay him. Perry told Garza that he did not have any money. Garza then pulled a gun from his waistband and shot Perry. Perry screamed for help. Carroll tried to get the gun away from Garza, but Carroll slipped and fell on his back. Garza pointed the gun at Carroll's head and shot him. Arispe walked to the phone to call the police, but when Garza pointed the gun at him, Arispe put the phone down. Garza put the gun in his pocket, walked to his car, and drove away. Arispe called the police and the ambulance. Perry and Arispe both testified that Garza was not intoxicated at the time of the shooting. Carroll was taken to the hospital and died several days later.

### Defense Testimony

Dr. Sergio Murillo, a general practitioner, treated Garza on December 5, 1988, for depression and anxiety. Dr. Murillo gave Garza a B-complex shot and prescribed Librium, an anti-depressant drug. Garza did not return for further treatment.

Dr. Nalini Naik, a family practitioner, testified that Garza had come to her office on June 18, 1989 (three weeks before the shooting). Although Dr. Naik had treated members of Garza's family, she had never treated Garza before that day. Dr. Naik diagnosed Garza as depressed and suicidal. Dr. Naik prescribed two anti-anxiety drugs (Prozac and Serax) for Garza and gave him a twenty-one day supply of Prozac. Dr. Naik told Garza about the possible side effects of Prozac and asked him to return in two weeks for a follow-up visit. Garza, however, failed to return. Dr. Naik testified that one percent of persons who take Prozac may experience nausea, dizziness, and muscle spasms. In addition, Dr. Naik stated that one percent of the persons taking Prozac may be prone to occasional violent behavior. Dr. Naik said that it takes two or three days for a patient to get Prozac out of his system once the patient stops taking it.

### REQUESTED INSTRUCTION ON THE COURT'S CHARGE

In his first point of error, Garza contends that the trial court erred in overruling his requested instruction. He argues that the jury should have been charged that the prescription drug (Prozac) may cause involuntary conduct as a side effect and that the

drug caused him to involuntarily kill Timothy Carroll.

The accused is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is weak or strong. *Hayes v. State,* 728 S.W.2d 804, 807 (Tex.Crim.App. 1987). The defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge. *Id.* The defensive theory must be clearly and independently raised by the evidence in an affirmative manner. *Smith v. State,* 752 S.W.2d 121, 125 (Tex.App.—Tyler 1986, pet. ref'd). If the requested charge merely denies the existence of an essential element of the offense charged, without any basis in evidence, the trial court need not submit the issue affirmatively. *Green v. State,* 566 S.W.2d 578, 584 (Tex.Crim.App.1978); *Smith,* 752 S.W.2d at 125. When an issue is not raised by the evidence, the trial court acts properly in refusing a request to instruct on that issue. *Brooks v. State,* 642 S.W.2d 791, 799 (Tex.Crim.App.1982). To raise an issue, the defendant needs to refer the appellate court to a page or pages in the record where he raised such an issue before the jury. *Brooks,* 642 S.W.2d at 799.

In order for the jury to be charged on the defense of Prozac's effects, Garza needed to show to the trial court how the evidence raised his affirmative defense. Garza failed to show this Court where in the record he raised this defense. Neither the State nor the defense presented testimony showing that Garza took the Prozac as prescribed. Although Dr. Naik testified that she gave Garza a twenty-one day supply of Prozac, no evidence exists in the record to show that Garza took the Prozac as prescribed. Garza asks this Court to speculate from a silent record that he took Prozac and that he is in the one-percent of the population in which Prozac causes violent behavior. This Court cannot base an inference upon an inference to reach Garza's conclusion that he was acting under the influence of Prozac when he killed Carroll. *Nethery v. State,* 692 S.W.2d 686, 704 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Reed v. State,* 703 S.W.2d 380, 385 (Tex.App.—Dallas 1986, pet. ref'd). Because the evidence failed to raise the issue before the jury, the trial court properly overruled Garza's requested instruction. We overrule Garza's first point of error.

### OBJECTION TO THE COURT'S CHARGE

In his second point of error, Garza contends that the trial court erred in overruling his objection to the court's charge. He argues that the trial court's charge on voluntary intoxication and the definition of intoxication, as written, constituted a comment on the weight of the evidence and asked the jury to ignore Dr. Naik's testimony that Prozac causes depression and violence in about one percent of the individuals who take the drug.

In its charge to the jury, the trial court may not express an opinion on the weight of the evidence, sum up the testimony, discuss the facts, or use any argument calculated to arouse the sympathy of the jury. Tex.Code Crim.Proc.Ann. art. 36.14 (Vernon Supp.1992); *see also Hawkins v. State,* 656 S.W.2d 70, 73 (Tex.Crim.App. 1983). The charge given to the jury tracks the language of section 8.04 of the Texas Penal Code. *See* Tex.Penal Code Ann. § 8.04 (Vernon 1974). The court's charge stated:

> Voluntary intoxication does not constitute a defense to the commission of a crime.
>
> By the term "intoxication" as used herein is meant disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

The court's charge informed the jury that intoxication could result from the introduction of any substance into the body. This definition includes Prozac or any other drug. In Garza's closing argument, the trial court allowed him to argue about the side effects of Prozac. The jury could have considered the effect of Prozac, or anything else in the record, when deciding

whether Garza acted with the requisite intent or knowledge to kill Carroll. The trial court did nothing more than provide the jury with the relevant law. This does not constitute a comment on the weight of the evidence. Because the court's charge tracked the language of the statute, it was not a comment on the weight of the evidence, and the trial court did not err in overruling Garza's objection to the jury instructions. We overrule Garza's second point of error.

We affirm the trial court's judgment.