**Juan Manuel MARTINEZ,**

v.

**STATE of Texas.**

**No. 04–91–00335–CR.**

Court of Appeals of Texas,
San Antonio.

Dec. 23, 1992.

Discretionary Review Refused
April 14, 1993.

Francisco Javier Montemayor, Ada Cronfel, Public Defender's Office, Laredo, for appellant.

Indalecio R. (Andy) Guardiola, Asst. Crim. Dist. Atty., Laredo, for appellee.

Before BUTTS, PEEPLES and CARR, Justice.

## OPINION

BUTTS, Justice.

A jury convicted appellant of murder and assessed punishment at fifteen years confinement. Appellant raises five points of error, complaining of the sufficiency of the evidence, admission of evidence of extraneous offenses, and the court's refusal to submit a special issue asking the jury to make a specific finding of use of a deadly weapon. We reform the judgment to reflect that the jury made a finding of use of a deadly weapon. We affirm the judgment as reformed.

Jesse Garza and the victim, Luis Eduardo (Eddie) Garza, returned to Jesse's house in Laredo from a trip to Nuevo Laredo at approximately one o'clock in the morning. Jesse had gone inside the house to get a drink when he heard three gunshots. He looked out and saw Eddie lying on the ground. Jesse's mother also heard the gunshots and saw a faded blue Suburban speeding away from the house. She did not see the occupants of the Suburban. Eddie told her, "They shot me." When she asked who, he responded, "Juan."

Jesse testified that the relationship between himself and appellant had been bad for a long time. A police investigator testified that appellant told him that he left work at one o'clock on the morning of the shooting and was picked up by a friend, Rolando Ornelas, in a blue Suburban. They went to appellant's house so appellant could change his clothes and then went to Rolando's house to watch movies. Appellant told the investigator that he would not go near Jesse's house because he was afraid of being beat up.

The same police investigator testified that Rolando Ornelas led the police to the blue Suburban and the rifle used in the shooting. Rolando told the officer that he and appellant went to Jesse's house; Rolando drove the vehicle and appellant shot the victim. A casing was discovered inside the Suburban on the floor behind the driver's seat.

A friend of Rolando's testified that appellant told her that Rolando "had nothing to do with what had happened," that the fight was with appellant. When asked what she understood him to mean by "what had happened," she replied, "The killing of Luis Eduardo Garza." She stated that appellant asked her to write a letter saying that Rolando confessed to killing Eddie, but she refused to do so. On cross-examination she admitted that she was in love with Rolando, but insisted that she was not lying for him. She also stated that appellant did not exactly say that he was the one who did the shooting. He just told her that "the fight was not with Rolando, that the fight was with him."

In point of error one, appellant contends that the evidence is insufficient to prove that he knowingly caused the death of Eddie Garza because the charge did not contain an instruction on the law of transferred intent. The State's theory of the case was clearly that appellant shot Eddie, thinking that he was Jesse. Appellant urges that, to obtain a conviction on this theory, the State was required to see that the jury charge contained an instruction on transferred intent. Because the charge did not contain this instruction, the jury was required to find that appellant intentionally or knowingly caused the death of Eddie Garza. He argues that the evidence shows only that he had a bad relationship with Jesse, and perhaps could show that he intended to kill Jesse, but that there is no evidence that he intended to kill or knowingly killed Eddie.

Appellant's reliance on the law of transferred intent is misplaced. That law is contained in section 6.04(b) of the penal code, which provides,

> A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:
>
> (1) a different offense was committed; or
>
> (2) a different person or property was injured, harmed, or otherwise affected.

TEX.PENAL CODE ANN. § 6.04(b) (Vernon 1974).

■ Transferred intent cases under the second subsection above generally involve situations where the defendant intends to shoot one person, but misses and strikes another. It is said that the intent to harm the intended victim transfers to the actual victim, and the defendant is guilty just as if he had struck the intended victim.[1] In such a case, the State must request that the jury be instructed on the law of transferred intent or else it must sustain the higher burden of proving that the defendant actually intended to shoot the victim, rather than the person at whom he aimed. *See Garrett v. State*, 642 S.W.2d 779, 781 (Tex.Crim.App.1982).

The theory of transferred intent has been explained as follows:

> In the unintended-victim (or bad-aim) situation—where A aims at B but misses, hitting C—it is the view of the criminal law that A is just as guilty as if his aim had been accurate. Thus where A aims at B with a murderous intent to kill, but because of a bad aim he hits and kills C, A is uniformly held guilty of the murder of C.
>
> . . . .
>
> The situation, discussed above, concerning the unintended victim of an intentional crime—which we have referred to for short as the bad-aim situation—is to be distinguished from an entirely different unintended-victim case—the mistaken-identity situation—which is governed by a quite separate set of legal rules. Thus in the semi-darkness A shoots, with intent to kill, at a vague form he supposes to be his enemy B but who is actually another person C; his well-aimed bullet kills C. Here too A is guilty of murdering C, to the same extent he would have been guilty of murdering B had he made no mistake. A intended to kill the person at whom he aimed, so there is even less difficulty in holding him guilty than in the bad-aim situation.

1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 3.12(d) (1986).

■ It is apparent that the present case does not involve the law of transferred intent. It was not the State's theory that appellant was aiming at someone other than the victim and simply missed his intended target. Therefore, a jury charge on transferred intent was not necessary. Our record contains sufficient evidence, as noted below, to prove that appellant knowingly aimed the gun at Eddie Garza, fired the gun at Eddie Garza, and thereby caused Eddie Garza's death. The fact that he may have believed that the victim was Jesse Garza is immaterial. Appellant was aware that his conduct in shooting at the person standing outside the house was reasonably certain to cause the death of that person, *see* TEX.PENAL CODE ANN. § 6.03(b) (Vernon 1974) (definition of "knowingly"); the law of transferred intent does not apply. Point of error one is overruled.

■ In point of error two, appellant contends that the evidence was insufficient to prove that he was the person who shot

---

1. The following cases demonstrate the application of the law of transferred intent:

In *Garrett v. State*, 749 S.W.2d 784 (Tex.Crim.App.1986), the defendant shot a rifle toward an occupied trailer house. A person with whom she was having a dispute was between her and the trailer, and it appeared that she intended to shoot him. The shot missed, however, and entered the trailer, killing a woman inside. Transferred intent would have applied had it been properly submitted in the jury charge.

In *Aguirre v. State*, 732 S.W.2d 320 (Tex.Crim.App.1982), the defendant fired a shotgun through the door of his ex-wife's house, with the intent to kill her. The shotgun blast struck and killed his daughter instead. Defendant's intent to kill his ex-wife transferred to the killing of his child, and he was guilty of her murder. *Id.* at 326 (opinion on motion for rehearing).

In *Johnigan v. State*, 502 S.W.2d 136 (Tex.Crim.App.1973), the defendant shot at a man named McCloud, but missed and hit the victim, Mims. The court held that the evidence was sufficient to sustain his conviction for the murder of Mims under the rule of transferred intent. *Id.* at 137.

In *Garcia v. State*, 791 S.W.2d 279 (Tex.App.—Corpus Christi 1990, pet. ref'd), Jose Mata and Javier Gamez were standing outside Gamez's house. The defendant, who had had an altercation with Gamez, shot a gun intending to kill Gamez. The bullet missed and struck Mata, killing him. Defendant's intent to kill Gamez transferred to the killing of Mata, and he was guilty of Mata's murder. *Id.* at 281–82.

Eddie Garza. In point of error three, appellant contends that the court erred in denying his motion for instructed verdict because the State failed to prove that he knowingly shot Eddie Garza. In reviewing the sufficiency of the evidence, this court must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Little v. State*, 758 S.W.2d 551, 562 (Tex.Crim. App.), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). This is the standard of review in both direct and circumstantial evidence cases. *Butler v. State*, 769 S.W.2d 234, 238 (Tex.Crim.App. 1989), *overruled in part on other grounds, Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991); *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Crim.App.1984).

The following evidence supports the jury's finding that appellant was the person who shot Eddie Garza: While there were no eyewitnesses who testified they saw the actual shooting, several witnesses told the police that they saw a faded blue Suburban speeding away from the scene moments after the shooting. Rolando Ornelas led the police to that Suburban. He told them that he was driving it on the night of the shooting, appellant was a passenger, and appellant was the one who shot Eddie.[2] A friend of Rolando's testified that appellant told her that Rolando was not involved in the shooting, but that "the fight" was with appellant. Finally, a witness who spoke to the victim immediately after he was shot testified that he said he had been shot by "Juan." The victim did not specify "Juan Martinez," but his dying statement, in conjunction with other evidence placing appellant at the scene, is sufficient to support the jury's finding that appellant was the person who shot the victim. The trier of fact is the sole judge of

the credibility of the witnesses and the weight to be given to their testimony. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim.App.1982).

There was some evidence at trial that appellant told a police officer that Rolando picked him up from work that evening in the blue Suburban, but that the two spent the evening watching movies and did not go to Jesse Garza's house. "Simply because appellant presented a different version of the events, the evidence is not rendered insufficient." *Little v. State*, 758 S.W.2d at 562–63 (quoting *Anderson v. State*, 701 S.W.2d 868, 872–73 (Tex.Crim. App.1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986)). Point of error two is overruled.

We now consider the sufficiency of the evidence to support the jury's finding that appellant intentionally or knowingly shot Eddie Garza. Knowledge and intent can be inferred from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App.1982); *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim.App.1980); *Castellano v. State*, 810 S.W.2d 800, 807 (Tex.App.—Austin 1991, no pet.); *Brown v. State*, 704 S.W.2d 506, 507 (Tex.App.—Dallas 1986, pet. ref'd).

The indictment charged appellant with "intentionally and knowingly" causing the death of Eddie Garza, and the jury was charged that they must find that appellant "intentionally or knowingly" caused the death. "The specific intent to kill may be inferred from the use of a deadly weapon." *Flanagan v. State*, 675 S.W.2d 734, 744 (Tex.Crim.App.1984) (on motion for rehearing). The weapon used was a rifle, which is a deadly weapon *per se*. TEX.PENAL CODE ANN. § 1.07(a)(11)(A) (Vernon 1974).

There was sufficient evidence to support the jury's finding that appellant was the actor who shot the deceased, as noted above. Further, the jury could find from the evidence that appellant had the specific

---

**2.** We note that no objection was raised to the police officer relating what the accomplice had told him. In any event, in assessing the sufficiency of the evidence to support a conviction, the reviewing court must consider all of the

evidence which the jury was permitted, rightly or wrongly, to consider. *Rodriguez v. State*, 819 S.W.2d 871, 872 (Tex.Crim.App.1991); *Deason v. State*, 786 S.W.2d 711, 716 (Tex.Crim.App.1990).

intent to kill the person who was standing in front of the house.

The evidence shows that three shots were fired at Eddie Garza as he stood outside the house. One struck Eddie, another struck a car near where he was standing. (It is not clear from the record what became of the third bullet.) Further, appellant told another witness that "the fight" had been with him. The evidence supports the finding that appellant intentionally or knowingly shot and killed the person who was standing in front of the house. As noted above, the fact that he believed the victim to be someone else does not alter that conclusion. (See the discussion under point of error one above.) Point of error three is overruled.

In point of error four, appellant contends that the court erred in denying his motion for mistrial after the State introduced evidence of extraneous offenses in violation of a motion in limine. In his brief, appellant complains of three specific instances in which evidence of extraneous offenses was elicited: (1) a police officer testified that Jesse said that appellant had threatened him; (2) Jesse testified that appellant had gone by to shoot at his house before; and (3) the State questioned Jesse concerning bullet hole damage to his car that existed prior to the shooting in question.

■■■■ An error in admission of testimony can generally be cured by an instruction to disregard. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex.Crim.App.), *cert. denied*, 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987); *Guzmon v. State*, 697 S.W.2d 404, 408 (Tex.Crim.App.1985), *cert. denied*, 475 U.S. 1090, 106 S.Ct. 1479, 89 L.Ed.2d 734 (1986); *Coe v. State*, 683 S.W.2d 431, 436 (Tex.Crim.App.1984). This is so except where it appears that the evidence is "clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds." *Gardner v. State*, 730 S.W.2d at 696.

Regarding the first and second complaints listed above, appellant's objections were sustained and the jury was instructed to disregard the statements that appellant had threatened Jesse and that appellant had previously gone by to shoot at Jesse's house. The statements were not clearly calculated to inflame the minds of the jury, nor were they of such a character that the impression produced on the minds of the jurors could not be withdrawn. *See Gardner v. State*, 730 S.W.2d at 696. The court's instruction cured the error, if any, and it was not error to deny appellant's motions for mistrial.

■■■■ Concerning appellant's third complaint, we first note that appellant initially raised the issue of the prior bullet hole in Jesse's car during cross-examination of police investigator J.J. Cantu. The officer had testified that the car at the scene had two bullet holes in it. He testified on cross-examination that the police found only one bullet in the car, the two holes were caused by separate shots, and the second hole looked like an old shot.

Jesse Garza testified immediately after Officer Cantu. The State inquired about the second bullet hole in the car:

Q  How did it get that?

A  How?  Somebody went and shot. Drive-by shooting.

Q  Okay. And, did you report that to the police?

A  Yes, I did.

Q  When was that?

At this point, appellant objected. The court overruled the objection, as well as a further objection to the witness's personal knowledge of the events to which he was testifying.

The State again asked Jesse when the bullet hole was put in the car. He responded, "About a month before my friend was shot." Appellant objected on the grounds of relevancy and that the testimony concerned a prior act of misconduct. The court overruled the objection. Appellant took the witness on voir dire and established that he had no personal knowledge of who shot a hole in the car. Upon appellant's request, the court then admonished the State that it could question the witness only as to when the bullet damage oc-

curred, but not as to who did it. The State then asked whether the damage occurred before the shooting of Eddie Garza, and the witness answered, "Yes." Appellant objected that the question was leading and that the State was trying to connect the prior occurrence with the shooting in issue. The court sustained the objection but denied appellant's motion for mistrial.

To preserve error, the appellant must raise a timely objection. Tex.R.App.P. 52(a); *Ranson v. State,* 707 S.W.2d 96, 99 (Tex.Crim.App.), *cert. denied,* 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 88 (1986). Appellant has not preserved any error for our review regarding the testimony that someone shot at the car during a drive-by shooting. He did not raise any objection to that testimony, but objected only when the State tried to establish that the car was shot at prior to the time Eddie Garza was shot. Appellant was not harmed by the admission of this evidence because he had already established through Officer Cantu that the second bullet hole pre-dated the one caused during the shooting of Eddie Garza.[3] *See* Tex.R.App.P. 81(b)(2). Point of error four is overruled.

■ In point of error five, appellant contends that the court erred in refusing to submit a special issue asking the jury for a specific finding on the use of a deadly weapon by appellant. He relies on the following holding of the court of criminal appeals in *Travelstead v. State,* 693 S.W.2d 400 (Tex.Crim.App.1985):

> When a defendant *is a party,* as defined in Sections 7.01 and 7.02 of the Penal Code, to the use or exhibition of a deadly weapon, there must be a specific finding by the trier of facts that the defendant himself used or exhibited the deadly weapon. The power of the trial court to make an affirmative finding should only be invoked if he is the trier of facts.

When the issue of punishment is before the jury, the trial court should submit a special issue to the jury regarding an affirmative finding of a deadly weapon. *Id.* at 402 (emphasis added).

*Travelstead* does not apply to the case at bar. While there was evidence that Rolando Ornelas drove the Suburban at the time of the shooting and owned the rifle that was used in the shooting, appellant was not indicted or tried as a party. The only theory presented by the State was that appellant, himself, shot and killed Eddie Garza. The indictment stated that "JUAN M. MARTINEZ and ROLANDO ORNELAS did then and there intentionally and knowingly cause the death of an individual, Luis Eduardo Garza, by shooting him with a deadly weapon, to-wit: a firearm." The verdict of the jury read, "We, the Jury, find the defendant, JUAN M. MARTINEZ, 'Guilty' of the offense of Murder as alleged in the Indictment." Because the indictment specifically pleaded the use of a deadly weapon, the jury was required to find that a deadly weapon had been used if it found appellant guilty. Therefore, the jury's verdict is, de facto, an affirmative finding of use of a deadly weapon. *See Polk v. State,* 693 S.W.2d 391, 394–96 (Tex. Crim.App.1985). This is an instance when an affirmative finding arises as a matter of law. The court did not err in refusing to submit a special issue on the use of a deadly weapon by appellant.

■ The court did err, however, in reciting in the judgment that "the Court hereby finds that the Defendant, JUAN M. MARTINEZ, exhibited and used a deadly weapon, to-wit: a firearm in the commission of the offense of Murder." "Since the jury determined appellant's guilt and punishment, it was the proper fact finder to determine whether appellant used a deadly weapon." *Polk v. State,* 693 S.W.2d at

---

3. The following exchange occurred during the cross-examination of Officer Cantu:

> Q Those are two separate shots, sir?
> A Yes, sir. Because, the bullet that entered the back of the glass of the vehicle was recovered in the back of the back seat; directly in a direct line. This other wound, I did not find an exit for it, I did not find any bullet for it.
> Q So this looks like an old shot?
> A Yes, sir.
> Q In other words, this is a new shot that could have occurred that day, but, this is an old shot?
> A Like I said, these are two bullet holes, different, okay? ....

394. The judgment should read that the jury made the finding. *Id.* at 395. We reform the judgment to replace the language recited above with the following language: "the jury finds that the Defendant, JUAN M. MARTINEZ, exhibited and used a deadly weapon, to-wit: a firearm in the commission of the offense of Murder."

Point of error five is overruled.

The judgment is affirmed as reformed.