Criminal Case Template



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



BRUCE ANTHONY COLEMAN,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-05-00258-CR


Appeal from the


Criminal District Court No. 5


of Dallas County, Texas


(TC# F-0320507-IL)


O P I N I O N



 This is an appeal from a jury conviction for the offense of aggravated assault. The jury
assessed punishment at twenty years' imprisonment in the Institutional Division of the Texas
Department of Criminal Justice. We affirm.

 Latoya Coleman and Appellant were married and had one child, a son. Appellant had a
son from a previous marriage. Latoya Coleman testified that during her seven-and-one-half-year
marriage to Appellant, he was abusive and controlling. On one occasion, she tried to obtain a
driver's license. Appellant objected and told her he would, "get a shit load of arsenal" and "hunt
[her] down." She obtained a protective order against Appellant and moved in with her sister,
Jaywana Tadros, and Tadros's husband, Jason Tadros.

 Latoya Coleman's relationship with Appellant continued to deteriorate to the point where
she only communicated with Appellant about matters concerning their children. He accused her
of infidelity and begged her to come back to him. On Christmas day of 2003, Latoya Coleman
spoke to Appellant on the telephone and told him he could pick up the children at her mother's
home. She spoke to Appellant at about 10 p.m. after the children had returned. Appellant stated
that he loved her and that things were going to work out. A short time later she heard a knock at
the front door. She heard a loud bang, and she heard her brother-in-law cry out in pain. Her five-year-old niece came running down the hallway, and she stated that her father had been shot. 

 When Latoya Coleman tried to call the police, there was no dial tone. She turned and saw
Appellant pointing a gun at her. He was trying to pull the trigger, but the gun had jammed. As
he tried to fix the weapon, she grabbed her cell phone and she got into a closet with her two sons;
she leaned against the closet door. Appellant got his hand through the door and pointed the gun
at her head. Again, the gun jammed. Appellant hit his wife in the face with the gun. She heard
sirens, and Appellant fled.

 Jason Tadros testified that he, his wife, and daughter were watching television in their
bedroom when the doorbell rang. Jason Tadros went to answer the door and his daughter
followed him. When he opened the door, there was stranger at the door who said something
about the garbage at the back of the house. Appellant suddenly appeared at the side of the man at
the door with a gun pointed at Jason Tadros. Tadros raised his hand just as Appellant fired and
the bullet went through his hand, through his ear, and lodged in his throat. Tadros fell to the
ground. As he lay on the floor, Jason Tadros heard the sound of the door being pushed open and
two sets of feet stepped over him. Then he heard screaming and yelling coming from within the
house.

 Jaywana Tadros testified that she heard a gunshot several seconds after her husband left
the bedroom to answer the doorbell. Then her daughter ran back into the bedroom screaming. 
Jaywana Tadros was trying to get her daughter under the bed when Appellant came into the room
and pointed the gun at her. She thought that Appellant might have mistaken her for her sister,
Latoya Coleman. He pulled the trigger, but the gun would not discharge. He tried to pull the
trigger a second time, but the gun would still not fire. When Appellant left the room, Jaywana
Tadros went to get help.

 Lastly, there was testimony that search of the residence was conducted by police officers
and it appeared that the wires in the phone junction box on the south side of the house had been
jerked out.

 In Issue No. One, Appellant asserts that the evidence was factually insufficient to prove
Appellant intended to threaten the complaining witness. In reviewing the factual sufficiency of
the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring
neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis v. State, 922
S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is factually insufficient if it is so weak that it
would be clearly wrong and manifestly unjust to allow the verdict to stand, or the finding of guilt
is against the great weight and preponderance of the available evidence. Johnson, 23 S.W.3d at
11. Therefore, the question we must consider in conducting a factual sufficiency review is
whether a neutral review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine confidence in the fact finder's
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof. See id. In performing this review, we are to give due deference to the fact
finder's determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact finder is the judge
of the credibility of the witnesses and may "believe all, some, or none of the testimony."
Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may find the
evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1977).

 During Jaywana Tadros's testimony, she stated that as Appellant was pointing the gun at
her, he was yelling at her. She was trying to make him see who she was. She yelled at him,
"What are you doing?" and then she stated, "It's me, Jaywana." Appellant tried to pull the
trigger of the gun but it did not discharge. He pointed the gun at her a second time and stated,
"So you want to cheat?" Appellant tried to fire the gun a second time, and then he left. Jaywana
Tadros theorized that it was dark and Appellant mistook her for her sister.

 Appellant maintains that as there was evidence that Appellant mistook her for her sister,
the evidence was factually insufficient to prove that he intended to shoot Jaywana Tadros. 
However, the fact that Appellant might have mistook Jaywana Tadros for someone else does not
relieve him of criminal liability for having threatened the person at whom he was pointing the
gun. See Martinez v. State, 844 S.W.2d 279, 282 (Tex.App.--San Antonio 1992, pet. ref'd). 
Issue No. One is overruled.

 In Issue No. Two, Appellant maintains that the court erred by failing to properly instruct
the jury on the conduct elements applicable to the charged offense. Specifically, Appellant
asserts that the court erred in not limiting the definitions of "intentionally" and "knowingly" in
the jury charge so that the definitions focused on the nature of his conduct. Appellant reasons
that by instructing the jury on the complete definitions of intentionally and knowingly, the court
misled the jury as to how to properly analyze the intent element of the offense. In the court's
charge to the jury, the following instructions were given:

 A person acts intentionally, or with intent, with respect to the nature of his
conduct or to a result of his conduct when it is his conscious objective or desire to
engage in the conduct or cause the result.

 

 A person acts knowingly, or with knowledge, with respect to the nature of
his conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist. A person acts knowingly, or
with knowledge, with respect to a result of his conduct when he is aware that his
conduct is reasonably certain to cause the result.


 In the application paragraph, the charge stated:


 [I]f you find and believe from the evidence beyond a reasonable doubt that
the defendant, BRUCE ANTHONY COLEMAN, on or about the 28th day of
December, A.D., 2003, in the County of Dallas and State of Texas, did
unlawfully, then and there intentionally or knowingly threaten Jaywana Tadros
with imminent bodily injury, and said defendant did use or exhibit a deadly
weapon, to-wit: a firearm, during the commission of the assault, then you will find
the defendant guilty of the offense of aggravated assault with a deadly weapon, as
charged in the indictment. . . . 


 Appellant did not object to the charge.

 When reviewing charge error, we employ a two-step analysis. Washington v. State, 930
S.W.2d 695, 698 (Tex.App.--El Paso 1996, no pet.). We must first determine whether error
actually exists in the charge. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984);
Washington, 930 S.W.2d at 698. In performing this analysis, we view the charge as a whole and
our review should not be limited to a series of isolated statements or parts of the charge standing
alone. Washington, 930 S.W.2d at 698; see Holley v. State, 766 S.W.2d 254, 256
(Tex.Crim.App. 1989). Next, we must determine whether sufficient harm resulted from the error
to require reversal. Almanza, 686 S.W.2d at 171; Washington, 930 S.W.2d at 698. Which
harmless error standard applies depends upon whether the defendant objected. Abdnor v. State,
871 S.W.2d 726, 731-32 (Tex.Crim.App. 1994); Washington, 930 S.W.2d at 698. As in the
present case where the defendant failed to object, he must show that he suffered actual egregious
harm. Almanza, 686 S.W.2d at 171; Washington, 930 S.W.2d at 698. "Egregious harm" is
present "whenever a reviewing court finds that the case for conviction or punishment was
actually made clearly and significantly more persuasive by the error." Saunders v. State, 817
S.W.2d 688, 692 (Tex.Crim.App. 1991). To evaluate the impact of the error, we determine harm
"in light of the entire jury charge, the state of the evidence, including the contested issues and
weight of the probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole." Mann v. State, 964 S.W.2d 639, 641
(Tex.Crim.App. 1998). The purpose in such an undertaking is to reveal the actual, not merely the
theoretical, harm to the accused. Rudd v. State, 921 S.W.2d 370, 373 (Tex.App.--Texarkana
1996, pet. ref'd).

 Aggravated assault by threat is a "nature of conduct" offense and has no required result. 
See Sneed v. State, 803 S.W.2d 833, 835 n.2 (Tex.App.--Dallas 1991, pet. ref'd); Guzman v.
State, 988 S.W.2d 884, 887 (Tex.App.--Corpus Christi 1999, no pet.). The offense is satisfied if
the accused intentionally or knowingly engaged in the prohibited conduct-threatening with
imminent bodily injury, aggravated by making the threat with a deadly weapon. See Sneed, 803
S.W.2d at 835 n.2; Guzman, 988 S.W.2d at 887. Thus, the definitions in the charge concerning
the applicable culpable mental states should be limited to the nature of the conduct, rather than
result of conduct or circumstances surrounding the conduct.

 In the jury charge in this case, the trial court did not limit the definitions. By failing to do
so, the court erred. Cook v. State, 884 S.W.2d 485, 491 (Tex.Crim.App. 1994). After reviewing
the charge as a whole, however, we conclude the error did not cause Appellant egregious harm. 
In the application paragraph, the terms intentionally and knowingly clearly modify the nature of
Appellant's conduct in threatening Jaywana Tadros with imminent bodily injury, and there is no
reference to any other conduct element. Where the application paragraph correctly instructs the
jury, an error in the abstract instruction is not egregious. Medina v. State, 7 S.W.3d 633, 640
(Tex.Crim.App. 1999). Issue No. Two is overruled.

 In Issue No. Three, Appellant argues that the court erred by providing the jury with a
definition of reasonable doubt. The charge to the jury read in pertinent part:

 All persons are presumed to be innocent, and no person may be convicted of an
offense unless each element of the offense is proved beyond a reasonable doubt. 
The fact that a person has been arrested, confined, or indicted for, or otherwise
charged with, the offense gives rise to no inference of guilt at his trial. The law
does not require a defendant to prove his innocence or produce any evidence at
all. The presumption of innocence alone is sufficient to acquit the defendant,
unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt
after a careful and impartial consideration of all the evidence in the case.


 The prosecution has the burden of proving the defendant guilty, and it must do so
by proving each and every element of the offense charged beyond a reasonable
doubt; and if it fails to do so, you must acquit the defendant.

 

 It is not required that the prosecution prove guilt beyond all possible doubt; it is
required that the prosecution's proof excludes all 'reasonable doubt' concerning
the defendant's guilt.


 Appellant did not object to this instruction. Accordingly, Appellant must prove that he
suffered egregious harm. Almanza, 686 S.W.2d at 171.

 Appellant maintains on appeal that the above-quoted paragraph violated the holding of
Paulson v. State by giving a definition of reasonable doubt. In Geesa v. State, 820 S.W.2d 154
(Tex.Crim.App. 1991), the Texas Court of Criminal Appeals adopted a definitional instruction
for "reasonable doubt" and it required that the instruction be submitted to the jury in all criminal
cases. See Colbert v. State, 108 S.W.3d 316, 318 (Tex.Crim.App. 2003). The Court of Criminal
Appeals removed the requirement for the trial court to instruct the jury on the definition of
reasonable doubt in Paulson v. State, 28 S.W.3d 570, 573 (Tex.Crim.App. 2000). The court
determined in Paulson that the Geesa definition was confusing and logically flawed. Paulson,
28 S.W.3d at 573.

 This Court has previously rejected Appellant's argument in holdings that dealt with the
same language complained of in this instance. We stated that the challenged instruction does not
constitute a definition of "reasonable doubt;" therefore, it does not violate the holding in
Paulson. See Underwood v. State, 176 S.W.3d 635, 640-41 (Tex.App.--El Paso 2005, pet. ref'd);
Torres v. State, 116 S.W.3d 208, 212 (Tex.App.--El Paso 2003, no pet.). Issue No. Three is
overruled.

 We affirm the judgment of the trial court.


 DAVID WELLINGTON CHEW, Chief Justice


March 22, 2007


Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)

Barajas, C.J. (Ret.), sitting by assignment, not participating


(Do Not Publish)