

# NUMBER 13-17-00225-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**RYLEE CARL EKLUND,**                                               **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                               **Appellee.**

### On appeal from the 207th District Court
### of Comal County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Benavides
### Memorandum Opinion by Justice Rodriguez

Appellant Rylee Carl Eklund appeals his convictions for murder and aggravated assault. By twelve issues, appellant challenges the sufficiency of the evidence, the trial court's charge, and the constitutional effectiveness of his trial counsel. We affirm.

## I.    BACKGROUND[1]

Appellant was indicted on one count of murder and two counts of aggravated assault. *See* TEX. PENAL CODE ANN. §§ 19.02(b), 22.02(a)(2) (West, Westlaw through 2017 1st C.S.). The indictments related to the events of July 12, 2014, when appellant fired a shotgun at three former classmates, killing one and wounding the others. Viewed in the appropriate light, the evidence at trial establishes the following.

### A.    The State's Case

Appellant, who was then nineteen, was friends with Drake Lund and Sawyer Darwin. In the days preceding the shooting, appellant's parents were out of town, and Darwin and Lund visited appellant at his parents' home. Darwin spent the night there, and the next morning, Lund went to appellant's house to show off his new car.

On July 11, appellant texted Darwin about getting psychedelic mushrooms, marijuana, and ecstasy. Appellant drove to San Antonio to meet a drug dealer that night.

On July 12, appellant invited Darwin to his house to smoke marijuana. Darwin told appellant that he did not feel like smoking but offered to drink with him, and appellant agreed. Appellant also invited Lund to his house. Darwin invited along his friend Robert Bree. Bree understood that they would be drinking and possibly taking psychedelic mushrooms. Driving his new car, Lund picked up Darwin and Bree and drove to appellant's house.

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.). Because this is a transfer case, we apply the precedent of the Third Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

The boys arrived around 5:00 p.m., while it was daylight. They found the main gate locked, which Darwin thought was odd. They entered through a side gate, where they saw appellant's truck in the driveway. The three knocked on the door of the side house where appellant usually stayed, but there was no answer. They peered in a window, but they could not see appellant.

The boys then knocked on the doors of the main residence. Again there was no answer. They observed that all the lights were off, which they found unusual. Beginning to worry for appellant's well-being, the boys continued to knock on doors and began knocking on windows. They also yelled for appellant, as Darwin described it, "Rylee, can you hear us? This is Sawyer [Darwin] and Drake [Lund]. Are you there? Are you okay?" They tried calling appellant twice, to no avail. Several minutes passed.

Eventually, they moved around to the front porch and knocked on the door one more time. Darwin stood on the front porch, while Lund and Bree stood on the lawn.

While they discussed what to do, appellant fired a 12-gauge shotgun through the closed window blinds at them. The first shot struck Lund and Darwin; Darwin collapsed to the ground. Appellant fired two more shots, striking Darwin in the chest and Bree in the stomach. Bree began to scream and run. Lund soon died as a result of his wounds.

When the shooting stopped, Bree contacted police and applied pressure to Darwin's wounds. After a few minutes, appellant emerged from the house crying and went to Darwin, saying, "Oh, my gosh, Sawyer, what did I do? I'm sorry." Police arrived, and Darwin was airlifted to a hospital, where life-saving surgery was performed.

Darwin suffered extensive injuries and partial disability to his left arm. Multiple shotgun pellets remain lodged in his body, including his heart. Pellets also remain in Bree's stomach.

**B.    Appellant's Testimony and 911 Call**

Appellant testified that he was sleeping on the couch in the living room when he was awakened by the sound of a "gate jingling." He explained that he looked out the blinds and saw a car he did not recognize driving up to the side gate of his house. According to appellant, the vehicle was partially obscured by trees, and he could only see someone in the back seat whom he did not recognize. He testified that he began locking the doors and closing the blinds in fear. Appellant stated that he saw an unknown stranger pass by a window, and he retreated to his parents' master bedroom where the firearms were kept, fearing that the strangers were burglars. He locked the bedroom door, shut himself in the closet, and called 911.

In the 911 recording, appellant spoke in a whisper to the operator, describing his fear that "one or two" strangers were outside his house. The operator dispatched an officer but explained that the officer was not nearby. Appellant described hearing the strangers knocking on the door and, later, talking. Roughly ten minutes into the call, appellant's line went silent.

Appellant testified that he grabbed a shotgun and left the closet. He stated that he heard what sounded like a window being opened, broken, or "something being jostled with." He explained that he saw three figures out the window, but could not see their faces. He decided to fire:

4

A.    I fired—the direction I tried to fire was away from them, but with immediate getaway, with the immediate sense of, "You're not supposed to be here.   Get away."

Q.    But you fired at the three figures, correct?

A.    Yes.

Q.    Okay.   Why did you do that?

A.    I felt they were trying to break in.

Q.    Describe the—the manner in which you shot them.

A.    I shot—I shot three shots in succession:   One shot, two shot, three shots.

Q.    Okay.   Through the window that the figures were in front of?

A.    Yes.

Q.    Through the window the noise was coming from?

A.    Yes.

Q.    What did you hear or see after you pulled the trigger?

A.    After I pulled the trigger, I heard screaming and yelling, and I looked through the blinds.

Q.    Okay.   What did you hear and see at that point?

A.    I saw my friends.   I saw my friends were shot outside in front—in the yard.

Appellant testified that if he knew that it was his friends in the front yard, he would not have fired, and that his intention was to fire three warning shots.

## C.    Jury Verdict

At the close of the evidence, the jury found appellant guilty as charged on the murder and aggravated assault counts.   The jury assessed punishment at fifteen years' confinement on the murder count, and at ten and five years on the aggravated assault

5

counts, respectively. The sentences were ordered to run concurrently. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE: TRANSFERRED INTENT

By his first through fifth issues, appellant challenges the sufficiency of the evidence on intent. He draws attention to the fact that the State did not submit jury instructions on the law of transferred intent. He contends that without a transferred intent instruction, the State was required to prove that appellant directed his assaultive acts not at unknown strangers, but specifically at Lund, Darwin, and Bree. He argues that because the evidence unequivocally establishes that appellant did not know that the perceived burglars were his friends, the evidence was insufficient to prove intent, which is an element of both aggravated assault and murder.

## A. Transferred Intent

Under the theory of transferred intent, a person can be held criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person was injured, harmed, or otherwise affected. TEX. PENAL CODE ANN. § 6.04(b)(2) (West, Westlaw through 2017 1st C.S.). Transferred intent is raised when there is evidence that a defendant, with the required culpable mental state, intends to injure or harm a specific person but injures or harms a different person. *Trevino v. State*, 228 S.W.3d 729, 737 (Tex. App.—Corpus Christi 2006, pet. ref'd) (op. on reh'g). The "classic example" of transferred intent is the act of firing at an intended victim while that person is in a group of other persons; if the intended person is killed, the offense is murder, but if a different person in the group is killed, the offense is murder pursuant to the transferred intent rule. *Roberts v. State*, 273

6

S.W.3d 322, 330 (Tex. Crim. App. 2008). "Thus where A aims at B with a murderous intent to kill, but because of a bad aim he hits and kills C, A is uniformly held guilty of the murder of C." *Martinez v. State*, 844 S.W.2d 279, 282 (Tex. App.—San Antonio 1992, pet. ref'd).

However, the "bad-aim" scenario "is to be distinguished from an entirely different unintended-victim case—the mistaken-identity situation—which is governed by a quite separate set of legal rules." *Id.* "Thus in the semi-darkness A shoots, with intent to kill, at a vague form he supposes to be his enemy B but who is actually another person C; his well-aimed bullet kills C." *Id.* "Here too A is guilty of murdering C, to the same extent he would have been guilty of murdering B had he made no mistake." *Id.* "A intended to kill the person at whom he aimed, so there is even less difficulty in holding him guilty than in the bad-aim situation." *Id.*

The present case does not involve the law of transferred intent. *See id.* It was not the State's theory that appellant was aiming at someone other than the victims and simply missed his intended target. *See id.* The State instead introduced evidence that appellant fired at three individuals on his porch; the fact that these persons were his well-meaning friends rather than shadowy strangers is immaterial. *See id.* Therefore, the law of transferred intent does not apply. *See id.*

**B.    Sufficiency of the Evidence**

Appellant testified that he did not intend to fire at the perceived strangers, but instead intended to fire warning shots in an effort to scare them off. He argues that in light of this testimony, the evidence is insufficient to show that he intended to assault or kill his friends. When reviewing the sufficiency of the evidence, we view the evidence in

the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We must presume that the jury resolved any conflicting inferences in favor of the verdict. *Id.*

The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *Medina v. State*, 7 S.W.3d 633, 637 (Tex. Crim. App. 1999) (en banc). "If a deadly weapon is used in [a] deadly manner, the inference is almost conclusive that he intended to kill." *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986) (en banc). "Naturally, the most obvious cases, and the easiest ones in which to prove a specific intent to kill, are those cases in which a firearm was used and was fired or attempted to have been fired at a person." *Id.*

Here, appellant fired three shots through the window directly at the individuals who stood on his front porch, striking all three. A rational jury could have inferred the necessary intent from this evidence beyond a reasonable doubt, *see id.*, and it could have disbelieved appellant's testimony to the contrary. *See Queeman*, 520 S.W.3d at 622. We find the evidence sufficient to show the element of intent. *See id.*

**C.    Conclusion**

Appellant's first through fifth issues are overruled.

8

### III. UNREQUESTED INSTRUCTIONS

By his sixth through tenth issues, appellant protests the trial court's failure to instruct the jury on five defensive issues: "apparent danger, the castle doctrine provisions, use of deadly force to protect property, a view of the events through the eyes of Appellant alone, [and] mistake of fact." Appellant concedes that he did not request instructions on these issues. He contends, however, that the trial court erred by not instructing the jury on these issues sua sponte.

Texas Code of Criminal Procedure article 36.14 directs the trial judge to deliver to the jury a written charge distinctly setting forth the law applicable to the case. *Mendez v. State*, 545 S.W.3d 548, 551–52 (Tex. Crim. App. 2018) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2017 1st C.S.)). This charge should include, at a minimum, "all of the law applicable to the criminal offense that is set out in the indictment or information," as well as "general admonishments, including . . . the presumption of innocence, proof beyond a reasonable doubt, unanimity of the verdict, and so forth." *Id.* at 552. These matters are always "law applicable to the case." *Id.* A judge is obligated to instruct on these issues *sua sponte*, even without prompting from counsel. *Id.*

But not every defense-benefitting instruction is "law applicable to the case," such that its exclusion from the charge is necessarily erroneous. *Id.* For instance, article 36.14 imposes no "duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues" such as mistake of fact. *Id.* (quoting *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (en banc)); *see Bennet v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) (holding that the trial court had no duty to charge the jury on unrequested defense-of-property instruction); *see also Payne v. State*, No. 05-11-00871-

9

CR, 2012 WL 4801520, at *9 (Tex. App.—Dallas Oct. 10, 2012, pet. ref'd) (mem. op., not designated for publication) (same as to other unrequested modifications of a self-defense instruction).

Here, appellant complains of the exclusion of five defensive issues from the charge, but he concedes that he never requested these instructions in the trial court. If the defendant fails to object to the absence of instructions on defensive issues in the jury charge, the trial court has committed no error at all; a trial court does not err by failing to instruct the jury on an issue that was, by virtue of appellant's silence, simply inapplicable to the case. *See Mendez*, 545 S.W.3d at 552. The trial court committed no error by excluding these unrequested defensive issues from the charge. *See id.*

We overrule appellant's sixth through tenth issues.

### IV. COMMENT ON THE EVIDENCE

By his eleventh issue, appellant protests the trial court's decision to instruct the jury that voluntary intoxication is no defense to the crime charged. He argues that this instruction constituted an impermissible comment on the weight of the evidence.

### A. Standard of Review and Applicable Law

Our review of an alleged jury charge error involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Initially, we determine whether error occurred, and we then determine whether sufficient harm resulted from the error to require reversal. *Id.*

The jury is the exclusive judge of the facts proved and of the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). In delivering the charge, a trial court should not express any opinion as to the weight of the

10

evidence. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 36.14). With only limited exceptions, the trial court may not include an instruction that focuses the jury's attention on a specific type of evidence that may support a finding of an element of an offense. *Kirsch*, 357 S.W.3d at 651. Even an instruction which is facially neutral and legally accurate may nevertheless constitute an improper comment on the weight of the evidence if it singles out a particular piece of evidence for special attention. *Id.*; *Bartlett*, 270 S.W.3d at 152.

## B.    Application

Appellant protests that the voluntary intoxication instruction was an impermissible comment on the weight of the evidence. He asserts that this instruction informed the jury of the trial court's view that appellant was intoxicated, without any direct proof of intoxication.

The penal code provides that voluntary intoxication does not constitute a defense to the commission of crime. *See* TEX. PENAL CODE ANN. § 8.04(a) (West, Westlaw through 2017 1st C.S.).[2] A defendant need not rely upon intoxication as a defense in order for the charge to feature a section 8.04(a) instruction. *Sakil v. State*, 287 S.W.3d 23, 26 n.8 (Tex. Crim. App. 2009) (citing *Taylor v. State*, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994)). Rather, a section 8.04(a) instruction on voluntary intoxication is appropriate "if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions." *Id.*; *Taylor*, 885 S.W.2d at 158.

---

[2] "Intoxication" is defined as a disturbance of mental or physical capacity resulting from the introduction of any substance into the body. TEX. PENAL CODE ANN. § 8.04(d) (West, Westlaw through 2017 1st C.S.).

Relying on *Taylor*, the transfer court for this case has concluded that a voluntary intoxication instruction is not an improper comment on the weight of the evidence. *Zuliani v. State*, 52 S.W.3d 825, 831–32 (Tex. App.—Austin 2001), *rev'd on other grounds*, 97 S.W.3d 589 (Tex. Crim. App. 2003). Instead, the court held that the ultimate question is whether the issue of intoxication is raised by the evidence; if so, a voluntary intoxication instruction is properly given. *See Zuliani*, 52 S.W.3d at 832.[3]

There was evidence from multiple sources that raised the issue of appellant's intoxication. Appellant's parents were out of town the weekend of the shooting, and Darwin testified that he slept over and drank margaritas with appellant days before. Text messages revealed that on the day before the shooting, appellant talked with Darwin about obtaining psychedelic mushrooms, marijuana, and ecstasy from a dealer, and appellant admitted that he met with the dealer in San Antonio later that day.

On the day of the shooting, appellant invited Darwin over to smoke marijuana, and Darwin agreed to come drink alcohol with him. Bree testified that he tagged along with Lund and Darwin with the understanding that they would possibly be ingesting psychedelic mushrooms at appellant's place. Bree brought along an anti-anxiety medication in case anyone experienced issues while using mushrooms.

Appellant testified that when the victims arrived on the afternoon of July 12, he was sleeping on the couch. He looked out the window and grew afraid because he did not recognize Lund's car, despite the fact that Lund had shown the car to appellant just days

---

[3] Other Texas courts have reached similar conclusions. *See Woodman v. State*, 491 S.W.3d 424, 429 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Haynes v. State*, 85 S.W.3d 855, 857–58 (Tex. App.—Waco 2002, pet. ref'd); *Garza v. State*, 829 S.W.2d 291, 295 (Tex. App.—Dallas 1992, pet. ref'd); *see also Esquivel v. State*, No. 04-06-00695-CR, 2007 WL 3171322, at *10–11 (Tex. App.—San Antonio Oct. 31, 2007, pet. ref'd) (mem. op., not designated for publication).

12

before. Appellant did not recognize two of his closest friends, and he instead grew so fearful of them that he closed all the blinds, locked the doors, hid in a closet, and called 911. He then shot three times out of the window blinds at the unknown individuals who were knocking on his front door. Following the shooting, a marijuana pipe, lighter, and baggie of marijuana were recovered from appellant's person, and bottles of liquor were found in the main house. A marijuana grinder was recovered from appellant's side house.

This evidence raised the question of whether appellant was intoxicated, *see Zuliani*, 52 S.W.3d at 831–32, and the trial court's simple recitation of the penal code provisions concerning voluntary intoxication did not convey any opinion as to the weight of this evidence. *See Bartlett*, 270 S.W.3d at 150. Instead, the trial court did nothing more than provide the jury with the law relevant to the situation. *See Garza*, 829 S.W.2d at 295. "At worst, the instruction was superfluous"; if the jury believed appellant was not intoxicated, then the jury could simply ignore the instruction. *See Zuliani*, 52 S.W.3d at 832. If the jury believed he was intoxicated, the instruction correctly guided them to ignore the intoxication. *See id.* The court's statement of the applicable law was not a comment on the weight of the evidence. *See id.*

We overrule appellant's eleventh issue.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

By his twelfth issue, appellant contends that he received ineffective assistance of counsel. Appellant argues that trial counsel's representation fell below the standard of constitutional adequacy when he failed to request certain defensive instructions and performed a poor cross-examination of Darwin and Bree.

13

**A.     Standard of Review and Applicable Law**

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. CONST. amend. VI. To prevail on an ineffective-assistance-of-counsel claim, an applicant must prove (1) that his trial counsel's performance was deficient and (2) that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The defendant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Prine v. State*, 537 S.W.3d 113, 116 (Tex. Crim. App. 2017).

Under the first prong of *Strickland*, counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688–89. In order to satisfy this prong, the defendant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the conduct constituted sound trial strategy. *Prine*, 537 S.W.3d at 117. To defeat this presumption, any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* Trial counsel should generally be given an opportunity to explain his actions before being found ineffective. *Id.* When, as in this case, the record is silent regarding trial counsel's strategy, this court can find ineffective assistance of counsel only if the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* The record on direct appeal is generally insufficient to satisfy this burden. *Id.*

14

**B.      Application**

Appellant first protests that trial counsel was deficient in cross-examining certain witnesses.   He argues that trial counsel pursued the wrong strategy by launching an anemic attempt to show that they were behaving like would-be burglars, thereby justifying appellant's fear and defensive actions.

However, appellant proposes no other approach that would have better addressed the complained-of testimony on cross-examination.   More importantly, the record is devoid of any testimony which could overcome the presumption of reasonable assistance, and we decline to second-guess counsel's approach with the benefit of hindsight.   *See id.* (rejecting an ineffective assistance claim concerning defects in cross-examination where record was silent about counsel's strategic thinking).

Appellant also complains that counsel was inadequate because he failed to request the inclusion of certain defensive issues in the jury charge, including "apparent danger,"[4] use of deadly force in defense of property, mistake of fact, "castle doctrine,"[5] and "a view of the events through the eyes of Appellant alone."[6]   However, the record fails to disclose why trial counsel did not seek these instructions.   Nothing appears of record rebutting the presumption that counsel's actions were based on sound trial

---

[4] Appellant draws the phrase "apparent danger" from *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996) ("A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real.").   He produces no authority supporting the use of this phrase in jury instructions.

[5] Appellant uses this term to refer to the rules discussed in penal code 9.32.   *See* TEX. PENAL CODE ANN. § 9.32(b)–(d) (West, Westlaw through 2017 1st C.S.).

[6] Citing *Wilson v. State*, 145 S.W.2d 890, 893 (Tex. Crim. App. 1940), appellant proposes that in self-defense cases, a defendant is entitled to special instructions on the defendant's perspective if there is evidence that the defendant was in danger of unlawful attack from multiple assailants.

strategy, and the failure to request these defensive instructions was not so outrageous that no competent attorney would have engaged in it. *See, e.g., Thompson v. State*, 445 S.W.3d 408, 411 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (finding failure to request defense-of-property instruction was not outrageous where there was meager evidence raising that defense, in part because the property belonged to a third person); *Chatman v. State*, No. 13-10-00190-CR, 2011 WL 1442338, at *5 (Tex. App.—Corpus Christi Apr. 14, 2011, no pet.) (mem. op., not designated for publication) (finding evidence insufficient to rebut presumption of reasonable assistance where record was silent as to counsel's reasons for not requesting a mistake-of-fact instruction). In the face of an undeveloped record, we cannot say that appellant carried his burden to satisfy the first prong of *Strickland*. *See* 466 U.S. at 688–89; *Prine*, 537 S.W.3d at 117.

We overrule appellant's twelfth and final issue.

## VI. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
18th day of October, 2018.