PD-0645-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/8/2015 8:53:20 AM
Accepted 7/9/2015 3:51:45 PM
ABEL ACOSTA
CLERK

# NO. PD-0645-15

# IN THE
# COURT OF CRIMINAL APPEALS
# FOR THE STATE OF TEXAS

## DAVID RAY SNEED
**Appellant**
v.
## STATE OF TEXAS
**Appellee**

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

Petition from the 52nd Judicial District Court of Coryell County, Texas
Trial Court Cause Number FAM-13-21634 and
Cause Number 10–14–00207–CR in the Tenth Court of Appeals of Texas

**LAW OFFICE OF STAN SCHWIEGER**
600 Austin Avenue, Suite 12
P.O. Box 975
Waco, Texas 76703-0975
(254) 752-5678
(254) 752-7792—Facsimile
E-mail: wacocrimatty@yahoo.com
State Bar No. 17880500

FILED IN
COURT OF CRIMINAL APPEALS

July 9, 2015

ABEL ACOSTA, CLERK

**ORAL ARGUMENT REQUESTED**

## NAMES OF THE PARTIES TO THE FINAL JUDGMENT

**STATE OF TEXAS**
Mr. Charles Karakashian
(Appeal)
Mr. Scott Stevens
Ms. Amanda Speer
(Trial)
Assistant District Attorneys
Coryell County District Attorney's Office
P.O. Box 919
Gatesville, Texas 76528

**APPELLANT'S TRIAL COUNSEL**
Mr. Keith Woodley
Woodley & Dudley
P.O. Box 99
306 North Austin
Comanche, Texas 76442-0099

**APPELLANT'S COUNSEL ON APPEAL**
Mr. Stan Schwieger
P.O. Box 975
601 Austin Avenue, Suite 12
Waco, Texas  76703-0975

**TRIAL JUDGE**
The Honorable Judge Trent Farrell
52nd Judicial District Court
Coryell County Courthouse
2nd Floor
620 East Main Street
Gatesville, Texas 76528

# TABLE OF CONTENTS

NAMES OF ALL PARTIES TO THE FINAL JUDGMENT. . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE
STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . v

GROUND FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii
      The court of appeals erred in holding the jury charge did not expand the
      theory of conviction.

GROUND FOR REVIEW RESTATED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.     Reasons for review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.     Grounds for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

         1.     The matter arose out of a purported to display of force against the
             police. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
         2.     Appellant's complaint was an expansion of the charging instrument
             to allow an unpleaded theory of conviction. . . . . . . . . . . . . . . . 7

    C.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4

APPENDIX:     *Sneed v. State*, No. 10-14-00207-CR, 2015 WL 2170232 (Tex. App.—Waco May 7, 2015, no pet. h) (mem. op., not designated for publication).

# INDEX OF AUTHORITIES

## STATE CASES

*Bradley v. State*,
    235 S.W.3d 808 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Byrd v. State*,
    336 S.W.3d 242 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Guzman v. State*,
    955 S.W.2d 85 (Tex. Crim. App. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Johnson v. State*,
    364 S.W.3d 292 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Martinez v. State*,
    844 S.W.2d 279 (Tex. App.—San Antonio 1992, pet. ref'd). . . . . . . . . . . . 10

*Sneed v. State*,
    No. 10-14-00207-CR, 2015 WL 2170232 (Tex. App.—Waco May 7, 2015, no
    pet. h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATE STATUTES

Tex. Penal Code Ann. § 22.02 (West 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . v

## STATE RULES

Tex. R. App. P. 66.3(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## MISCELLANEOUS

Wayne R. LaFave,
    1 Substantive Criminal Law § 6.3 (2d ed. 2003). . . . . . . . . . . . . . . . . . . . . . 10

William L. Prosser,
 *Transferred Intent,* 45 Tex. L. Rev. 650 (1967). . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Tommy Joe Woods respectfully requests that this appeal be presented on oral argument.

## STATEMENT OF THE CASE
## STATEMENT OF PROCEDURAL HISTORY

The State of Texas indicted Appellant in cause number FAM-13-21634 for the offense of Aggravated Assault of a Public Servant.[1] Trial began on June 23, 2014 in the 52nd District Court of Coryell County, Texas, with the Honorable Trent D. Farrell presiding. After a trial to the jury, Appellant was found guilty of the indicted offense on June 25, 2014.[2] Appellant elected the jury for punishment, which imposed a fifteen year sentence in the Texas Department of Criminal Justice, Institutional Division, with a $5000.00 fine.[3] Sentence was imposed in open court on June 26, 2014. Notice of appeal was timely filed on July 9, 2014.[4] The trial court certified Mr. Sneed's right to appeal on June 26, 2014.[5] The Tenth Court of Appeals affirmed the judgment of the

---

[1]    TEX. PENAL CODE ANN. § 22.02 (West 2014); (I C.R. at 3).

[2]    (I C.R. at 33).

[3]    (I C.R. at 39).

[4]    (I C.R. at 49–50).

[5]    (I C.R. at 38).

trial court on May 7, 2015.[6]  One extension to file this Petition was granted by this

Court on May 28, 2015.[7]

---

[6]     *Sneed v. State*, No. 10-14-00207-CR, 2015 WL 2170232, at *3 (Tex. App.—Waco May 7, 2015, no pet. h.) (mem. op., not designated for publication).

[7]     Texas Court of Criminal Appeals, Case Detail, http://tinyurl.com/ojpousb (last visited July 4, 2015).

## GROUND FOR REVIEW

The court of appeals erred in holding the jury charge did not expand the theory of conviction.

**GROUND FOR REVIEW RESTATED:**

The court of appeals erred in holding the jury charge did not expand the theory of conviction.

The statutory principle of transferred intent is raised when there is evidence a defendant with the required culpable mental state intends to injure or harm a specific person but injures or harms a different person. There is evidence that Sergeant Sands, dressed in uniform, approached Sneed at the gate of his property, and Sneed confronted Sergeant Sands and told him to leave. Later that night, Sergeant Schmidt was in the same area where Sergeant Sands previously encountered Sneed. Sergeant Schmidt heard Sneed yell, "you f--king pigs, I see you sitting down there. I told you to leave." Sergeant Schmidt then saw Sneed fire shots in his direction. We find that the trial court did not err in instructing the jury on the theory of transferred intent. There is evidence that Sneed threatened Sergeant Schmidt with imminent bodily injury by discharging a firearm in the direction of Sergeant Schmidt while intending to threaten Sergeant Sands by discharging a firearm in the direction of Steve Sands.[8]

This was not the issue as raised below– instead this portion of the opinion is a straw man erected by the Tenth Court of Appeals to allow that court to affirm the decision.[9] Instead, the issue as raised below was whether the indictment allowed the application of transferred intent as presented in the jury charge.[10] The indictment did not, and as such, this Court should grant review of this matter.

---

[8] *Sneed v. State*, No. 10–14–00207–CR, 2015 WL 2170232, at *3 (Tex. App.—Waco May 7, 2015, no pet. h) (mem. op., not designated for publication).

[9] *Id.*

[10] *See* Appellant's Br. at p. ix ("The jury charge was egregiously harmful by expanding the theory of conviction.").

### A.    *Reasons for review.*

Whether to exercise discretionary review in a particular case has been described as "an internal matter that is subject to some debate among the various judges on the Court—i.e., should we exercise our discretionary authority to correct 'errors' in the lower courts or should we exercise our discretionary authority as the 'caretaker of Texas law.'"[11] This case offers something for both sides of that debate. Although existing in the common law of England since at least the 1600's, the court of appeals has misconstrued the law of transferred intent.[12]   In doing so, the court of appeals decided an important question of state in a way that conflicts with the applicable decisions of this Court.[13]

### B.    *Grounds for Review.*

Because the issue before this court is inextricably bound with the facts, a short factual background will be necessary. Next, Petitioner will show that the transferred intent charge, is given by the trial court, and approved by the Tenth Court of Appeals, stands in violation of this ancient concept of criminal law.

---

[11]    *Guzman v. State*, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997) (en banc).

[12]    *Cf. Bradley v. State*, 235 S.W.3d 808, 810 (Tex. Crim. App. 2007) (Cochran, J., concurring statement in the denial of the petition for discretionary review) (citing this as a reason for this Court to exercise its discretionary review authority).

[13]    TEX. R. APP. P. 66.3(c).

### 1. The matter arose out of a purported to display of force against the police.

In this matter, the indictment alleged that Mr. Sneed threatened "Ronald Schmidt with imminent bodily injury by discharging a firearm in the direction of Ronald Schmidt, and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, and the Defendant did then and there know that the said Ronald Schmidt was then and there a public servant, to-wit: a deputy for the Coryell County Sheriff's Office, and that the said Ronald Schmidt was then and there lawfully discharging an official duty, to-wit: responding to assist in the execution of an outstanding warrant . . ."[14]

In support of this, the State offered testimony that on February 8, 2013,[15] near 7:00 p.m, Coryell County Deputy Sheriff Steve Sands[16] tried to serve a felony warrant on Appellant David Sneed.[17] Mr. Sneed, found at the front gate of his property, declined arrest – in no uncertain terms.[18] Deputy Sands described as "very agitated and

---

[14] (I C.R. at 4).

[15] (4 R.R. at 23).

[16] Sands was wearing a peace officer's uniform, driving a marked car. (4 R.R. at 25–26).

[17] (4 R.R. at 23).

[18] (4 R.R. at 24–25).

confrontational."[19]  Not knowing if the gate was locked, Sands stated that he was not "going to try to climb over a locked gate with his confrontational type attitude," and drove away.[20]

Following the retreat, Deputy Sands met up with Coryell County Deputies Ronald Schmidt, Randal Hill, and Ron Morgan[21] at a location named the "triangle."[22] At this time, Schmidt heard Appellant Sneed stated "you fucking pigs, I see you sitting down there. I told you to leave."[23]  At the conclusion of the purported rant, Schmidt reported "several shots were fired off."[24]  The quartet decided that Deputy Schmidt would drive by in an unmarked car[25] to "see if he was standing outside or if he could see where he was."[26]  Deputy Schmidt testified that he saw "Mr. Sneed exiting at his

---

[19]     (4 R.R. at 26).

[20]     (4 R.R. at 26, 41).

[21]     (4 R.R. at 26).

[22]     (7 R.R. Def. Ex. 1).

[23]     (4 R.R. at 116).  Schmidt later added that during that evening, he saw no wild pigs that may have been hunted that night.  (4 R.R. at 119).  Instead, he felt as though the "statement about pigs" was a "derogatory term for police officers."  (4 R.R. at 119).

[24]     (4 R.R. at 116).

[25]     (4 R.R. at 44) (described as a Coryell County unmarked Dodge pickup).  Schmidt went on to say that this is not the type of vehicle that would "jump up at you and say police car . . ."  (4 R.R. at 102).  He later added that the truck " . . . does not look like a police vehicle."  (4 R.R. at 102).

[26]     (4 R.R. at 27).

house at a – what I call an aggressive pace. He was like walking very quickly toward the pickup truck that was parked out in front of his house carrying a long rifle or a long gun."[27]

After this sighting, Schmidt reported by radio that decided that "for the safety of the officers, we needed to just go back to the sheriff's office, call it off for tonight and try to serve the warrant in the morning when the sun was up, we could see without getting someone hurt."[28] After the officers broke up for the evening, Schmidt stated that he "could hear Mr. Sneed yelling[29] and then I heard approximately 20 gunshots."[30] No muzzle blasts were visible during this alleged round of volleys.[31]

Because Schmidt could not see who was shooting, he moved to "higher ground to see for an attempt at "better visibility."[32] After moving, Schmidt then testified that he saw "a flash come out of the end of the barrel" which occurs "when someone fires a rifle or shotgun or pistol . . ."[33] The shape of the flash was a "small ball" which was

---

[27]   (4 R.R. at 104–05).

[28]   (4 R.R. at 31).

[29]   Schmidt later testified that he was unable to see who was yelling or cursing at him at this time. (4 R.R. at 136).

[30]   (4 R.R. at 106).

[31]   (4 R.R. at 135).

[32]   (4 R.R. at 107).

[33]   (4 R.R. at 107).

interpreted as "that wherever the flash was coming from, it was pointed in the direction that I was at."[34] These events were visible to Schmidt at least three times, all coming from "back towards Sneed's residence."[35] Furthermore, Schmidt stated that someone pointing or firing a gun in his general direction "threatening."[36] Schmidt continued that he considered the behavior witnessed that night "threatening" also.[37]

However, Schmidt was unable to distinguish "where exactly where it was coming from."[38] Schmidt further added that he was uncertain as to whether Sneed was in "one particular location at the time of the muzzle flashes" going off.[39] Tellingly, Schmidt testified that he did not know the identity of the person who "uttered any words that night," other than the deputies he was with on the evening in question.[40] In fact, Schmidt stated that he did not know the identity of the person who fired "any

---

[34]     (4 R.R. at 107–08).

[35]     (4 R.R. at 108).

[36]     (4 R.R. at 119).

[37]     (4 R.R. at 119).

[38]     (4 R.R. at 117).

[39]     (4 R.R. at 124).

[40]     (4 R.R. at 143–44).

shotgun or rifle or any other firearm that night" which would have been related to this incident.[41]

Officers later executed a search warrant on the land of Mr. Sneed.[42] The officers searched the "hill area around"Mr. Sneed's home, outside and inside the residence and vehicles located on that property.[43] Various photographs demonstrated shell casings and weapons found around and inside the home of Mr. Sneed.[44] Inside the truck, ammunition of the same caliber and brand as a rifle found inside of Mr. Sneed's home was located.[45]

### 2. Appellant's complaint was an expansion of the charging instrument to allow an unpleaded theory of conviction.

The dual problems with the holding of the Court of Appeals is that the opinion did not address appellant's argument below,[46] but also misapplied centuries old legal theories. To set the table, it will be necessary to walk through some basic premises of Texas law.

---

[41]     (4 R.R. at 143).

[42]     (4 R.R. at 152).

[43]     (4 R.R. at 152).

[44]     (4 R.R. at 153–58).

[45]     (4 R.R. at 160-62).

[46]     *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised to necessary to the final disposition of the appeal.").

First, a victim's name need not be proved with exactness, but the State must prove that the victim alleged in the indictment is the same person as the victim proved at trial.[47] Continuing, a "variance" occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial.[48] Variances are mistakes of one sort or another. Sometimes they make no difference at all, sometimes they make all the difference.[49]

> Suppose, for example, the indictment alleges that the defendant killed Dangerous Dan McGrew. At trial, the State proves that the defendant killed Little Nell, not Dangerous Dan. That is a big mistake. Murder may be murder, but killing one person is not the same offense as killing an entirely different person. In such a case, the State has failed to prove its allegation that the defendant killed Dangerous Dan McGrew, and the defendant is entitled to an acquittal.[50]

Finally, the doctrine of "transferred intent" occurs when a defendant shoots at A, intending to wound or kill him. "His aim is bad, and he misses A. The bullet passes through a screen of bushes and hits B. Defendant is unaware of B's presence, and he could not reasonably have been expected to be aware of it. There is no intent to hit B . . . [t]he injury to B is an accident, pure and simple. The intent as to A is

---

[47]    *Johnson v. State*, 364 S.W.3d 292, 295 (Tex. Crim. App. 2012).

[48]    *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011).

[49]    *Id.*

[50]    *Id.*

pieced together with the resulting injury to B." It is "transferred" from A to B: "The intention follows the bullet."[51]

Tying the seemingly unrelated concepts together places the Waco Court of Appeals in error. The named victim alleged to be the target of the assault in the indictment is allowed to take the role of the unintended target contrary to the law of charging instruments in this State, and to centuries-old settled case law. The formula as illustrated above is this: D misses A, hits B. The intent to injure to A is transferred to B, and D is criminally liable on the assault of B, as he would be as if B was the intended target. The purported intended victim in this matter was Ronald Schmidt.[52] However, the court instructed the jury that the true complaining witness was Steve Sands:

> If you believe from the evidence beyond a reasonable doubt that the defendant, David Ray Sneed, on or about the 8th day of February, 2013, in the County of Coryell, and State of Texas, as alleged in the indictment, that the defendant while intending to threaten Steve Sands by discharging a firearm in the direction of Steve Sands, and while then and there using or threatening to use a deadly weapon to-wit: a firearm, during the commission of said assault, and while knowing that Steve Sands was then and there a public servant, to-wit: a deputy for the Coryell County Sheriff's Office and while Steve Sands was then and there lawfully discharging an official duty, to-wit: attempting to execute an outstanding warrant, did then and there threaten Ronald Schmidt with imminent

---

[51]    William L. Prosser, *Transferred Intent*, 45 TEX. L. REV. 650 (1967).

[52]    (I C.R. at 4).

bodily injury by discharging a firearm in the direction of Ronald Schmidt, then you will find the defendant guilty of the offense of aggravated assault on a public servant with a deadly weapon.[53]

First, this is an incorrect application of transferred intent. The transferred intent street only runs one way – for proper inclusion of this charge, the State would have had to show that Mr. Sneed intended to injure or harm Deputy Schmidt (because of his status as a peace officer) – **AND BY THOSE ACTIONS** – caused injury to Deputy Sands.[54] The lack of intent as to Deputy Schmidt is not revived when a "better" complaining witness is dropped into the mix. As Professor LaFave stated, "one type of knowledge will not suffice where the statute requires knowledge as to a different type of harm."[55]

As allowed by the indictment, the application of transferred intent looks like this: D misses A (SCHMIDT) and threatens B (SANDS). The intent to injure to A (SCHMIDT) is transferred to B (SANDS), and D is criminally liable on the assault of B (SANDS), as he would be as if B (SANDS) was the intended target. Here, the State

---

[53]     (I C.R. at 25).

[54]     *See Martinez v. State*, 844 S.W.2d 279, 282 (Tex. App.—San Antonio 1992, pet. ref'd) ("In the unintended-victim (or bad-aim) situation—where A aims at B but misses, hitting C—it is the view of the criminal law that A is just as guilty as if his aim had been accurate. Thus where A aims at B with a murderous intent to kill, but because of a bad aim he hits and kills C, A is uniformly held guilty of the murder of C.").

[55]     WAYNE R. LaFAVE, 1 SUBSTANTIVE CRIMINAL LAW § 6.3 (2d ed. 2003).

was allowed to do a pirouette, improperly allowing the jury to consider an unnamed victim.

In other words, it is not the inclusion of transferred intent that is erroneous. As stated previously, it is not necessary to plead this as part of the indictment. ***It is the allowance of a unnamed victim in this matter that broadens the indictment and the basis for conviction.*** This is the "big mistake" in pleading and proof as set forth in *Byrd*.[56] Accordingly, the Waco court erred in allowing the improper broadening the indictment by adding the transferred intent language.

In short, this error could have been avoided by alleging that both Deputy Schmidt and Deputy Sands were intended victims of Mr. Sneed. Both purported victims would of been before the court and the jury to decide whether the law of transferred intent or otherwise applied to these persons. It was not pled that way. Because the Waco Court of Appeals allowed expansion of the charging instrument to include an unnamed victim, the State was allowed to improperly increase the theories of conviction allowable under that indictment. Mr. Sneed request review of this matter, and ultimately, a remand to the Court of Appeals to conduct a proper harm analysis on this error.

---

[56]     *Byrd*, 336 S.W.3d at 246–48.

*C.* *Conclusion.*

Given the Waco court of appeals disregard for this Court's decisions, and lack of legal support for its holding, this Court should grant review.

## PRAYER FOR RELIEF

For the reasons alleged above, Petitioner was denied a fair trial. Mr. Sneed prays that this Honorable Court will grant his Petition, and order a brief on the merits of this case.

Respectfully submitted,

**LAW OFFICE OF STAN SCHWIEGER**

/s/ Stan Schwieger
Stan Schwieger
600 Austin Avenue, Suite 12
P.O. Box 975
Waco, Texas  76703-0975
(254) 752-5678
(254) 752-7792—Facsimile
E-mail: wacocrimatty@yahoo.com
State Bar No. 17880500
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF SERVICE

A copy of the Petition delivered to Mr. Charles Karakashian, Coryell County

District Attorney's Office, Gatesville, Texas, attorney of record for the State of Texas

by this Court's electronic filing system, by e-mail to ckarakashian@aol.com and to the

State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711, by

first class mail, on July 7, 2015.

/s/ Stan Schwieger
Stan Schwieger

**CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4**

1.    This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) because this brief contains 2791 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2.    This brief complies with the typeface requirements and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been produced on a computer in conventional typeface using WordPerfect X7 in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.


/s/ Stan Schwieger
Stan Schwieger

2015 WL 2170232
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

DO NOT PUBLISH
Court of Appeals of Texas,
Waco.

David Ray Sneed, Appellant
v.
The State of Texas, Appellee

No. 10–14–00207–CR    |    Opinion delivered and filed May 7, 2015

**From the 52nd District Court, Coryell County, Texas, Trial Court No. Fam 13–21634**

**Attorneys and Law Firms**

Stan Schwieger, for David Ray Sneed.

Charles Karakashian Jr., Dustin H. Boyd, for the State of Texas.

Before Chief Justice Gray, Justice Davis, and Justice Scoggins

**MEMORANDUM OPINION**

AL SCOGGINS, Justice

 **\*1**  The jury convicted David Ray Sneed of the offense of aggravated assault of a public servant and assessed punishment at fifteen years confinement and a $5,000.00 fine. TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (West 2011). We affirm.

**Sufficiency of Evidence**

In the first issue on appeal, Sneed argues that the evidence is insufficient to support his conviction for the offense of aggravated assault of a public servant. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper,* 214 S.W.3d at 13.

*Lucio v. State,* 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert den'd,* 132 S.Ct. 2712, 183 L.Ed.2d 71 (2012).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State,* 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

On February 8, 2014, Sergeant Steve Sands, with the Coryell County Sheriff's Department, went to Sneed's home to serve a felony arrest warrant on Sneed. Sergeant Sands was driving his marked patrol unit and was dressed in his uniform. When he arrived at Sneed's residence, there was a locked gate on the front of the property. Behind the locked gate, there was a parked truck with its flashing lights activated. Sergeant Sands made contact with Sneed, and Sneed quickly approached the gate telling Sergeant Sands to "get the f--k out of here." Sergeant Sands told Sneed that he saw the lights flashing and wanted to make sure he was ok. Sneed responded that he was fine and again told Sergeant Sands to "get the f--k out of here." Sergeant Sands left Sneed's residence to avoid a confrontation at that time. He drove to a county road and called for backup.

 **\*2** Sergeant Sands met with Sergeant Ronald Schmidt and deputies Randal Hall and Ron Morgan to develop a plan of action. They decided that Sergeant Schmidt would drive by Sneed's house to determine Sneed's location. Sergeant Schmidt was in his county vehicle, an unmarked black Dodge pickup. Sergeant Schmidt testified at trial that he saw Sneed leave his house carrying a long gun and walk at an "aggressive pace" toward Sneed's pickup. Sergeant Schmidt stayed outside of Sneed's property to see if he left, and the other deputies set up a perimeter around the area so that they could stop Sneed if he left in his vehicle. Sergeant Schmidt testified that he heard Sneed yell, "you f--king pigs, I see you sitting down there. I told you to leave." Sergeant Schmidt then heard several shots fired. He testified that he knew the shots were fired in his direction because he could see the muzzle flashes that looked like a small ball. Texas Ranger Jason Bobo testified at trial and further explained that a person looking in the direction of the gun would see a round muzzle flash while a person looking to the side of the gun would see a delineation or more of a line type muzzle flash.

A person commits the offense of aggravated assault if the person commits assault as defined in Section 22.01 of the Penal Code and the person uses or exhibits a deadly weapon during the commission of the assault. Tex. Penal Code Ann. § 22.01(a)(2) (West 2011). The offense is a felony of the first degree if the offense is committed:

> (B) against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant

Tex. Penal Code Ann. § 22.02(b)(2)(B) (West 2011). Sneed argues that the evidence is insufficient to show that he knew of Sergeant Schmidt's status as a peace officer or that he knew he was discharging an official duty.

Sergeant Sands went to Sneed's residence in a marked patrol unit and dressed in uniform to serve a felony warrant. He left the premises after Sneed became confrontational. The record indicates that Sneed saw Sergeant Sands dressed in uniform. Later that evening, the four sheriff deputies were in the area around Sneed's home to serve the warrant. Sergeant Schmidt was outside the gate of Sneed's property where Sergeant Sands was located earlier that day during the confrontation with Sneed. Sergeant Schmidt heard Sneed yell, "you f--king pigs, I see you sitting down there. I told you to leave." Sergeant Schmidt testified that "pig" is a common derogatory word for police officers. Sneed then fired shots at Sergeant Schmidt.

The jury could have drawn the inference that Sneed knew Sergeant Schmidt was a public servant. *See Lucio v. State,* 351 S.W.3d 878, 894 (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781) (stating that sufficiency standard " 'gives full play to the responsibility of the trier of fact fairly ... to draw reasonable inferences from basic facts to ultimate facts.' "). Viewing the

evidence in the light most favorable to the verdict, we therefore conclude that the evidence was sufficient to prove that Sneed knew he was assaulting a public servant.

Sneed next contends that the evidence is insufficient to establish that he knew Sergeant Schmidt was discharging an official duty. Sneed concedes that the record reflects evidence of the official duties of law enforcement officers; however, he contends that there is no evidence he knew that Sergeant Schmidt was executing those official duties at that time. To prove either capital murder or aggravated assault of a peace officer, the State must show that the peace officer is "acting in the lawful discharge of an official duty," but the defendant need not know that specific fact. *See Mays v. State,* 318 S.W.3d 368,383–384 (Tex. Crim. App. 2010). The State must prove the defendant knew that he was assaulting a peace officer; however, proof that he also knew the officer was "lawfully discharging an official duty" is unnecessary. *Salazar v. State,* 643 S.W.2d 953, 956 (Tex. Crim. App. 1983). The evidence is sufficient to support a finding that the deputies were discharging an official duty. We overrule the first issue.

### Jury Charge

 **\*3**  In the second issue, Sneed argues that the trial court erred in charging the jury. Appellate review of alleged jury-charge error involves a two-step process. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, the court must determine whether error actually exists in the charge. If error is found, the court must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32.

Sneed complains that the inclusion of the theory of transferred intent in the jury charge unlawfully enlarged the theory of conviction. The jury was instructed on the law of transferred intent as follows:

> A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired contemplated or risked is that a different person or property was injured, harmed, or otherwise affected.

The jury was then instructed in the application paragraph as follows:

Now bearing in mind the following instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, David Ray Sneed, on or about the 8 $^{th}$ day of February, 2013, in the County of Coryell, and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly threaten Ronald Schmidt with imminent bodily injury by discharging a firearm in the direction of Ronald Schmidt, and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, and the Defendant did then and there know that the said Ronald Schmidt was then and there a public servant, to-wit: a deputy for the Coryell County Sheriff's Office, and that the said Ronald Schmidt was then and there lawfully discharging an official duty, to-wit: responding to assist in the execution of an outstanding warrant, then you will find the defendant guilty of the offense of aggravated assault on a public servant with a deadly weapon.

OR

Still bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, David Ray Sneed, on or about the 8 $^{th}$ day of February, 2013, in the County of Coryell, and State of Texas, as alleged in the indictment, that the defendant while intending to threaten Steve Sands by discharging a firearm in the direction of Steve Sands, and while then and there using or threatening to use a deadly weapon to-wit: a firearm, during the commission of said assault, and while knowing that Steve Sands was then and there a public servant, to-wit: a deputy for the Coryell County Sheriff's Office and while Steve Sands was then and there lawfully discharging an official duty, to-wit: attempting to execute an outstanding warrant, did then and there threaten Ronald Schmidt with imminent bodily injury by discharging a firearm in the direction of Ronald Schmidt, then you will find the defendant guilty of the offense of aggravated assault on a public servant with a deadly weapon.

The statutory principle of transferred intent is raised when there is evidence a defendant with the required culpable mental state intends to injure or harm a specific person but injures or harms a different person. *Manrique v. State,* 994 S.W.2d 640, 647 (Tex. Crim. App. 1999); *Delacerda v. State,* 425 S.W.3d 367, 397 (Tex.App.–Houston [1 Dist.] 2011, pet. ref'd). There is evidence that Sergeant Sands, dressed in uniform, approached Sneed at the gate of his property, and Sneed confronted Sergeant Sands and told him to leave. Later that night, Sergeant Schmidt was in the same area where Sergeant Sands previously encountered Sneed. Sergeant Schmidt heard Sneed yell, "you f--king pigs, I see you sitting down there. I told you to leave." Sergeant Schmidt then saw Sneed fire shots in his direction. We find that the trial court did not err in instructing the jury on the theory of transferred intent. There is evidence that Sneed threatened Sergeant Schmidt with imminent bodily injury by discharging a firearm in the direction of Sergeant Schmidt while intending to threaten Sergeant Sands by discharging a firearm in the direction of Steve Sands. We overrule the second issue.

## Conclusion

**\*4** We affirm the trial court's judgment.

**All Citations**

Not Reported in S.W.3d, 2015 WL 2170232

---

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.